FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
10 JAN 12 AM 11:06
CLERK - LAS CRUCES

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**JUANITA L. ESTRADA as the Personal Representative of Michael Molina, deceased; JUANITA L. ESTRADA individually; and REFUGIA LOPEZ, individually,**

**Plaintiffs,**

**vs.** **No. CIV 09-10 RB/CG**

**THE CITY OF LAS CRUCES; LCPD POLICE OFFICER MARK DOMINGUEZ; LCPD POLICE OFFICER HORACIO RIVERA; GEORGINA P. CORDOVA as the Personal Representative of the Estate of LCPD Police Officer David Cordova; and LCPD SUPERVISORY POLICE OFFICER(S) JOHN DOE(S) of the Las Cruces Police Department,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment as to the Claims of Refugia Lopez (Doc. 45), filed September 8, 2009. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.**

## I. PROCEDURAL BACKGROUND

Plaintiff Refugia Lopez brings state and federal claims against Officers Mark Dominguez, Horacio Rivera, and David Cordova, their supervising officers, and the City of Las Cruces. A Complaint for Damages in this matter was originally filed with the District Court of Doña Ana County on December 15, 2008. Notice of Removal was filed on January 6, 2009, and the case was properly removed to federal court under 28 U.S.C. § 1441. An Amended Complaint for Damages was then filed with the United States District Court for the District of New Mexico on May 9, 2009.

This Court has jurisdiction to hear the case under 28 U.S.C. § 1331, as this case involves federal questions arising under 42 U.S.C. § 1983. The Court has jurisdiction to hear Plaintiff's state law claims under 28 U.S.C. § 1367, as the claims arise out of the same case or controversy. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (finding that the claims must arise out of the "same nucleus of operative facts"). Defendants filed their Motion for Summary Judgment as to the Claims of Refugia Lopez, which is now before the Court, on September 8, 2009. Plaintiff filed her Response to Defendants' Motion for Summary Judgment on September 22, 2009, and Defendants filed a Memorandum in Reply on October 7, 2009.

## II. STATEMENT OF FACTS

The trial court must view the evidence and draw any reasonable inferences therefrom in favor of the non-moving party. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). Consequently, the facts in a memorandum opinion and order are typically set forth in the light most favorable to the non-moving party, in this case, Plaintiff Refugia Lopez. The facts set forth below have been gleaned from the parties' pleadings and any discovery materials provided to the Court. In viewing the facts, the Court has made all reasonable inferences in favor of Ms. Lopez; however, the Court has noted where there are any disputed facts and whether they are material.

This case involves the police shooting of Michael Molina, now deceased, and the actions of law enforcement officials from the Las Cruces Police Department (LCPD) leading up to and following the shooting. The shooting occurred at approximately 4:12 p.m. on the afternoon of December 26, 2006 at the Las Cruces residence of Gilbert and Juanita Estrada. Juanita Estrada is Michael Molina's mother and Plaintiff Refugia Lopez' sister. Also present were Juanita's and Refugia's sister Hilaria Ludwig, and Hilaria's husband William Ludwig.

On the afternoon of December 26, 2006, Plaintiff Refugia Lopez had stopped by the Estrada residence on Starview Drive in Las Cruces to visit her sister Juanita. Juanita Estrada's sister Hilaria and her husband William had also stopped by for a visit that day. The family gathered in the Estrada's TV/computer room, and the three sisters—Juanita, Refugia, and Hilaria—went to the kitchen to make coffee. While they were making coffee in the kitchen, Juanita Estrada's son, Michael Molina, arrived at the front door and rang the bell.

Michael had been living with Juanita and Gilbert Estrada, and they had given him a truck to drive that belonged to Gilbert. However, Juanita was concerned about her son's recent behavior, in particular, two recent incidents of drunk driving. Mrs. Estrada had decided it was time to put her foot down, and the couple was going to tell Michael that he could not use the truck anymore and that he was no longer welcome to live in their home. When Michael rang the doorbell that afternoon, Mrs. Estrada told him to go away; but Michael pleaded with his mother not to turn him away. When his mother would not let him in the front door, Michael went around to the back of the house and snuck in through the kitchen.

Juanita and her son began to talk about his recent behavior. Michael became upset by the conversation, and at one point, he told his mother that she had abandoned him, picked up a knife from the kitchen, and said that he should kill himself. Mrs. Estrada was concerned, and she told her sister Hilaria to have someone call the police. Hilaria's husband William Ludwig went outside and called 911 from his cell phone. Mr. Ludwig called the police three times; the third time he informed them that Michael had a knife and was threatening to kill himself. While the officers were en route, it appears that central dispatch updated the call from a "disorderly" to a "domestic"—which indicates a more serious situation—based on the information provided by Mr. Ludwig during the third call.

The police arrived at the house at 4:11 p.m. What happened after the officers arrived and leading up to Michael Molina's death is disputed by the parties; however, the disputed facts are not material to Plaintiff Refugia Lopez' claim. When the officers arrived they were greeted by William Ludwig, who informed them that Michael was still inside the house and that he had a kitchen knife. Michael come out the front door and stood on the porch with the knife in one hand. The officers drew their weapons and advanced across the yard toward the front porch. When the three officers were approximately twenty feet from the front porch, Michael either made a lunging movement forward and in the direction of the officers, or he dropped the knife and made a movement toward his right to hide behind a porch pillar. This movement caused the officers to discharge their weapons. The police shot Michael, and he was later pronounced dead at the hospital.

When the police shot Michael, Plaintiff Refugia Lopez was still inside the house with Juanita and Gilbert Estrada. After the shooting, Ms. Lopez went to the front door to try and get outside, but a police officer was holding the door shut with his foot. More police officers soon arrived on the scene, and Refugia, Juanita, and Gilbert were allowed outside. Plaintiff Refugia Lopez was the first to come out. As she exited the house, Officer Cordova grabbed her wrist and shoulder, handcuffed her behind her back, and then escorted her toward a small rock wall, where she was instructed to sit down. Ms. Lopez complained that her whole body felt sore the next day, particularly her left shoulder, which seemed to be bruised. She also noticed that her wrists were bruised from the handcuffs.

Juanita and Gilbert Estrada exited the house after Ms. Lopez. While neither of them were handcuffed, they were instructed to sit on the rock wall with Ms. Lopez. After a brief detention,

Plaintiff Refugia Lopez was approached by an officer who asked if he could speak with her and removed the handcuffs. It is not clear exactly how long Ms. Lopez was handcuffed. Defendants claim that she was detained no longer than five to ten minutes; however, the exact time of detention is not contested, and it is not material to Plaintiff Refugia Lopez' claims.

## III. DISCUSSION

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (quoting *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant—in this case, the Defendants—carries the initial burden of showing that no genuine issue of material fact exists. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party—Plaintiff Refugia Lopez—to find sufficient evidence that would warrant submission of the

case to a trier of fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). "Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor." *Adams*, 233 F.3d at 1246.

**B. Section 1983 Claim**

Plaintiff Refugia Lopez brings this claim against Officers Mark Dominguez, Horacio Rivera, and David Cordova, arguing that they violated her rights protected by the United States Constitution when they seized her as she exited the Estrada residence following the shooting of Michael Molina on December 26, 2006. Defendants assert a defense of qualified immunity. "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc); *see also Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009); *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Taking Plaintiff Refugia Lopez' allegations as true, if there has been no violation of her constitutional rights, then the Court can end its inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (concluding that "while the [two-step] sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory"). However, if Ms. Lopez successfully establishes a violation of her constitutional rights, the Court must then determine whether the right was clearly established at the time. *Id.*; *Fisher*, 584 F.3d at 893. It is not enough that the right be generally established, but the trial court must more specifically determine whether it would have been obvious to "a reasonable officer that his conduct was unlawful in the situation." *Saucier*, 533 U.S. at 202. "[T]he record must clearly demonstrate the plaintiff has satisfied [her] heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007).

*1. Unlawful Seizure Claim*

Plaintiff Refugia Lopez claims that Officers Mark Dominguez, Horacio Rivera and David Cordova of the Las Cruces Police Department violated her Fourth Amendment rights against unlawful seizures when they falsely arrested her as she exited Mrs. Estrada's house following the shooting of Michael Molina. Defendants counter that their actions were reasonable: the dispatch directions indicated that a violent domestic situation involving a deadly weapon was in progress, when they arrived they were confronted by a disturbed knife-wielding suspect, shots were fired, a young man lay seriously injured and bleeding on the Estrada's front porch, and several unidentified persons were still present inside the house; therefore, they seized Ms. Lopez and the other occupants of the house in order to temporarily freeze the situation and establish control over the crime scene.

There are "three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Defendants argue that Plaintiff Refugia Lopez' detention was an investigative detention governed by *Terry v. Ohio*, 392 U.S. 1 (1969); that when they arrived at the Estrada residence, tensions were high, there was a clear and immediate danger to both the officers and the other people at the scene, a shooting had just occurred, and, thus, they needed to temporarily freeze the situation to protect themselves and others. Indeed, a brief detention of Ms. Lopez for questioning or to establish control over the crime scene was clearly reasonable under the circumstances. *Walker v. City of Orem*, 451 F.3d 1139, 1148–49 (10th Cir. 2006) (finding that a brief detention of witnesses or bystanders reasonable for investigative purposes or to establish control over the crime scene). By using handcuffs, however, Defendants may have elevated what would have otherwise been a reasonable investigative detention to an arrest. *Oliver*, 209 F.3d at 1186 (finding that arrests are characterized by their highly intrusive nature, and

also the greater length of the detention); *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052–53 (10th Cir. 1994) (finding that where a *Terry* stop generally involves only "de minimus intrusions on the liberty of a person," an arrest is carried out through "the use of force such as handcuffs and firearms"); *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207–08 (10th Cir. 2006) ("Neither the brevity of the seizure nor its characterization as a prank enable the officer to prevail on summary judgment.").

Nonetheless, Defendants argue that under the community caretaker exception it was reasonable for Officer Cordova to handcuff Plaintiff Refugia Lopez; and therefore, the seizure does not qualify as an arrest. *See Melendez-Garcia*, 28 F.3d at 1052 ("The use of firearms, handcuffs, and other forceful techniques does not necessarily transform a *Terry* detention into a full custodial arrest—for which probable cause is required—when the circumstances reasonably warrant such measures."); *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) (finding that officers may seize individual to "ensure the safety of the public and/or individual"). For this exception to apply, officers must show that "the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Melendez-Garcia*, 28 F.3d at 1052. The trial court's inquiry must focus on "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them," *Graham v. Connor*, 490 U.S. 386, 397 (1989).

At the time Officer Cordova handcuffed Ms. Lopez and escorted her to the rock wall, there were several facts that would have led a reasonable officer to believe that the use of handcuffs was necessary under the circumstances. The dispatch call initially indicated a disorderly person, but was updated to a domestic disturbance en route. When they arrived at the Estrada residence, the officers were confronted by a disturbed, knife-wielding suspect who they feared might be a danger to

themselves or other bystanders. Then, the officers discharged their weapons—something that is an extraordinary occurrence in the career of any officer—adding more fuel to what was already a highly charged situation. The suspect lay handcuffed and bleeding on the front porch while several people from inside the house tried to exit through the front door, and from the outside, the officers could hear screaming or crying coming from Juanita Estrada, who was clearly distraught over what had just happened to her son. The officers did not know who the people inside the residence were, whether they were involved in the domestic disturbance, how they would react to the shooting, or whether they were armed.

While the use of handcuffs clearly represented an intrusion on the rights of Plaintiff Refugia Lopez, their use was justified by the circumstances of the encounter, and Defendants have articulated specific facts indicating why they believed the occupants of the residence might have posed a threat to the officers or bystanders. *See United States v. Cortez*, 449 U.S. 411, 417–18 (1981) (finding that under Tenth Circuit case law "officers are required to articulate specific justifications for uses of force during an investigative detention"); *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995); *Melendez-Garcia*, 28 F.3d 1046, 1052–53; *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" as "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Indeed, the situation at the Estrada residence was tense, and Officer Cordova reacted by handcuffing Plaintiff Refugia Lopez, who was the first person to exit the house. A quick sweep of the house revealed no weapons, and realizing that Ms. Lopez was not a threat, the officers

removed her handcuffs. Under the circumstances, the use of handcuffs was not an obvious violation of Ms. Lopez' constitutional rights; and therefore, Defendants are entitled to qualified immunity.

2. *Excessive Force Claim*

Plaintiff Refugia Lopez also alleges a violation of her constitutional right to be free from the use of excessive force by police officers. Although the Court already determined that Defendants are entitled to qualified immunity with regard to Ms. Lopez' claim of false arrest, it must also consider whether Defendants are entitled to qualified immunity on her Fourth Amendment claim of excessive force. In *Cortez* the Tenth Circuit "reject[ed] the idea . . . that a plaintiff's right to recover on an excessive force claim is dependent upon the outcome of an unlawful seizure claim," holding that "in cases involving claims of both unlawful [seizure] and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." 478 F.3d at 1127. "[A]n excessive force claim presents a discrete constitutional violation relating to the manner in which [a seizure] was carried out, and is independent of whether law enforcement had the power to [detain]." *Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006).

In the case at hand, however, Plaintiff Refugia Lopez has not alleged any facts that suggest the officers use of force went beyond what would be otherwise justified under the public caretaker exception. *See Melendez-Garcia*, 28 F.3d at 1052 ("The use of firearms, handcuffs, and other forceful techniques does not necessarily transform a *Terry* detention into a full custodial arrest—for which probable cause is required—when the circumstances reasonably warrant such measures.") Consequently, the officers' use of handcuffs and the fairly minimal amount of force applied appears reasonable in the circumstances. And because the handcuffing itself did not constitute an excessive

use of force, Ms. Lopez must show: "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Id.* at 1129 n. 25.

Indeed, Tenth Circuit "precedent requires a showing in a handcuffing case of an actual, non-de minimis physical, emotional, or dignitary injury to succeed on a claim." *Fisher*, 584 F.3d at 899. "[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 416–17 (5th Cir. 2007). In *Fisher*, the Tenth Circuit distinguished between the type of injuries suffered by Fisher—who shot himself in the bicep and was then forced to endure the excruciating pain of having his arms handcuffed behind his back—and those "where a plaintiff complains only of fleeting discomfort from handcuffing, or red marks or swelling that disappear in a few hours or days." 584 F.3d at 899 (comparing the injuries suffered by Fisher with those described in *Cortez*, 478 F.3d at 1129). The case at hand is more analogous to *Cortez* than *Fisher*. Mr. Cortez complained to the officers that the handcuffs were too tight, and the handcuffs left red marks that were visible for days afterward. *Cortez*, 478 F.3d at 1128. The Court concluded that "[t]his [was] insufficient as a matter of law, to support an excessive force claim." *Id.* at 1129; *see also Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (finding allegations of de minimis injuries from handcuffing insufficient to support a claim of excessive force); *Gilles v. Davis*, 427 F.3d 197, 207–08 (3d Cir. 2005) (finding no excessive force where suspect did not complain of any discomfort and did not seek medical treatment).

Plaintiff Refugia Lopez has not alleged or offered any proof of injuries that were not de minimis. In her affidavit, she stated that her whole body felt sore the next day—particularly her left

shoulder, which seemed to be bruised—and she noticed that her wrists were bruised from the handcuffs. She did not seek medical treatment, and she did not allege that the pain or bruising caused by the handcuffs lasted more than a few days. Furthermore, she did not allege any psychological injury. Such minor injuries fail the Tenth Circuit's requirement "of an actual, non-de minimis physical, emotional, or dignitary injury to succeed on a claim." *Fisher*, 584 F.3d at 899. Therefore, Ms. Lopez has failed to establish a violation of her Fourth Amendment right to be free from the use of excessive force, and Defendants are entitled to qualified immunity.

**C. Claim Against John Doe Supervisory Officers**

Plaintiff Refugia Lopez asserts claims against unnamed John Doe Supervisory Officers of the City of Las Cruces "based upon the negligent hire, negligent or failure to supervise, and negligent or failure to properly train the three officers." (Pls.' Amended Compl. ¶ 52.) In order to assert a § 1983 claim against a supervisory officer, "plaintiff must establish a 'deliberate, intentional act by the supervisor to violate constitutional rights.'" *Jenkins v. Wood*, 81 F.3d 988, 994–95 (10th Cir. 1996) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Ms. Lopez broadly claims that certain unidentified John Doe Supervisory officers were responsible for the alleged violations of her constitutional rights. As Plaintiff has made no showing that any individual "defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance," this claim against the unnamed supervisors is dismissed. *Jenkins*, 81 F.3d at 995 (citing *Woodward*, 977 F.2d at 1400). There is simply no evidence from which a reasonable jury could find a deliberate, intentional act on the part of the unnamed supervisors. Therefore, Defendants' Motion for Summary Judgment with respect to the claims against the unnamed John Doe Supervisory Officers is granted.

**D. Claim Against the City of Las Cruces**

Plaintiff Refugia Lopez brings a claim against the City of Las Cruces for damages resulting from "a 'custom' of negligent hire, negligent or failure to supervise, and negligent failure to provide adequate training to police officers who encounter mentally impaired individuals in the criminal process or in the community caretaker process." (Pls.' Amended Compl. ¶ 53.) In *Monell v. New York City Dept. of Soc. Servs.*, the U.S. Supreme Court found that under § 1983 a municipality may not be held liable under a theory of *respondeat superior* or vicarious liability for the acts of its officers. 436 U.S. 658, 694–95 (1978). Thus, the simple act of employing someone who violates another's constitutional rights is not sufficient for liability under § 1983. Instead, plaintiff must show that the municipality itself was responsible for the constitutional violation due to a specific government policy or custom. *Id.*; *City of Canton*, 489 U.S. at 385. Therefore, in order for Plaintiff Refugia Lopez' claim to survive Defendants' Motion for Summary Judgment, this Court must find that Ms. Lopez has presented evidence demonstrating "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.

Defendants argue that summary judgment is appropriate in the case at hand because (1) Plaintiff Refugia Lopez has failed to show that an officer committed a constitutional violation, and (2) Ms. Lopez has not identified a policy or custom that caused her alleged injury. *See Estate of Larsen v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("A § 1983 suit against a municipality for the actions of its police officers requires proof that (1) an officer committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred."); *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). In *Subsection B-1 (Unlawful Seizure Claim)*, the Court found

that Defendants were entitled to qualified immunity and granted summary judgment with regard to Plaintiff Refugia Lopez' Fourth Amendment claim of unlawful seizure. However, this does not necessarily mean that the officers did not violate Ms. Lopez' constitutional rights, only that, under the circumstances, it would not have been obvious to a reasonable officer that his conduct was unlawful. Without addressing the constitutional issue of Plaintiff's claim against the City of Las Cruces, the Court finds that summary judgment is appropriate based on Defendants' second argument, as Plaintiff Refugia Lopez has failed to identify a municipal policy or custom that led to the officers' excessive use of force.

Defendants do not dispute Plaintiff's factual allegations. Instead, Defendants argue that summary judgment is appropriate because Ms. Lopez failed to present any evidence identifying a policy or custom that led to the alleged constitutional violation. The only evidence of a policy or custom that Plaintiff provided is Officer Rivera's deposition testimony that several citizens made unsubstantiated claims against him in the past. Although not specifically stated in her Response, the Court understands Plaintiff Refugia Lopez to imply from this evidence that the City of Las Cruces has a custom of not investigating citizen complaints against its officers. This type of conclusory allegation is insufficient to state a constitutional violation. *Norton v. The City Of Marietta*, 432 F.3d 1145, 1155 (10th Cir. 2005) ("conclusory allegation . . . insufficient to state a constitutional claim against the City"); *Hinton v. Franck*, No. Civ. 00-1142, 2000 WL 1846195, at *4 (10th Cir. Dec. 18, 2000) ("vague, conclusory claims cannot withstand summary judgment"). Allowing such a claim to go forward would be tantamount to permitting *respondeat superior* liability for municipalities.

An official policy may be either "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. A custom is

"an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives" and "considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Therefore, in order to show that a municipality is pursuing a policy or custom of ignoring complaints of excessive force and allowing aggressive and incompetent officers to continue working with the public requires that evidence be adduced of continued and deliberate actions by the municipality. *Tuttle*, 471 U.S. at 823. Plaintiff Refugia Lopez has failed to meet her burden on summary judgment of producing evidence of an official policy or custom that led the officers to use excessive force. *See Wichita Coca-Cola Bottling Co.*, 968 F.2d at 1024. Ms. Lopez' bare allegations standing alone do not warrant submission of the claim to a trier of fact; and therefore, summary judgment is appropriate with regard to Plaintiff Refugia Lopez' claim against the City of Las Cruces.

**E. Conspiracy Claim**

Plaintiff Refugia Lopez also brings a claim against Defendants for conspiracy to deprive her of her due process rights by "allowing evidence to be lost, and rendition of events to be modified by permitting the three Police Officers . . . to meet and confer with one another, then with the union representative and criminal defense attorney, together and prior to their individual statements being taken by investigating detectives." (Pls.' Amended Compl. ¶ 54.) In essence, Plaintiff claims that Defendants engaged in a "cover-up" of the shooting to avoid civil liability. However, Ms. Lopez has

not produced any evidence to support this theory and did not address Defendants' arguments with respect to the conspiracy claim in her Response.

Defendants have met their initial burden of showing that there are no issues of material fact. *Celotex*, 477 U.S. at 325 (finding that burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Plaintiff Refugia Lopez, however, has not met her burden on summary judgment of providing evidence that would warrant submission of the case to a trier of fact. *Wichita Coca-Cola Bottling Co.*, 968 F.2d at 1024. Therefore, summary judgment as to Plaintiff's conspiracy claims is granted.

**F. State Law Claims**

Defendants have failed to carry their burden on summary judgment with respect to Plaintiff Refugia Lopez' state law claims, arguing for the first time in their Memorandum in Reply that the Court should grant summary judgment as to Plaintiff's state law claims. Thus, summary judgment is not appropriate. Generally, a district court will not consider granting summary judgment for a claim where movant argues for the first time in its memorandum in reply that summary judgment is appropriate. *See, e.g.*, *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (finding that failure to raise issue in opening brief constitutes waiver); *Taylor v. United Mgmt., Inc.*, 51 F.Supp.2d 1212, 1215 (D.N.M. 1999) (finding claim untimely when raised for the first time in reply brief); *Employers Mut. Cas. Co. v. Miner*, 6 F. Supp. 2d 1232, 1236 n. 5 (D. Kan. 1998) ("court will not grant summary judgment based on an issue raised for the first time in a reply brief.").

Defendants argue that this Court should consider granting summary judgment on the state law claims because Ms. Lopez did not articulate these claims in either the Joint Status Report or her

responsive pleading. While some courts have found that stipulations made in a joint status report may constitute waiver, this Court did not find any authority for the proposition that failure to raise a claim in a joint status report constitutes waiver. *See Dickson Industries, Inc. v. Patent Enforcement Team, L.L.C.*, Nos. 2008-1372, 2008-1398, 333 Fed.Appx. 514, 516 (10th Cir. May 20, 2009) (finding that any further objection regarding personal jurisdiction was waived in Joint Status Report which stipulated to the fact that court had jurisdiction over the matter); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 942–43 (9th Cir. 2009) (finding that right to a jury trial was waived in Joint Status Report which stated that "[n]o party has requested, or intends to request a jury as to any issue").

Furthermore, Ms. Lopez would have had no reason to articulate the state law claims in her responsive pleading if Defendants did not raise them in their Memorandum in Support of Motion for Summary Judgment. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. As Defendants failed to meet this initial burden, the Court will not now consider its argument for summary judgment with regard to Plaintiff Refugia Lopez' state law claims. Therefore, summary judgment is denied.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment unreasonable seizure claim is GRANTED. Under the circumstances, the use of handcuffs was not an obvious violation of Ms. Lopez' constitutional rights; and therefore, Defendants are entitled to

qualified immunity.

Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment excessive force claim is GRANTED. Plaintiff has not alleged or offered proof of any injuries that were not de minimis; and therefore, Defendants are entitled to qualified immunity.

Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against the unnamed John Doe Supervisory Officers is GRANTED. Ms. Lopez failed to present any evidence from which a reasonable jury could find a deliberate, intentional act on the part of the unnamed supervisors.

Defendants' Motion for Summary Judgment with respect to Plaintiff's claims against the City of Las Cruces is GRANTED. Plaintiff has failed to meet her burden on summary judgment of producing evidence of an official policy or custom that led to the alleged unlawful seizure. Plaintiff's bare allegations standing alone do not warrant submission of the claim to a trier of fact.

Defendants' Motion for Summary Judgment with respect to Plaintiff's conspiracy claims is GRANTED. Ms. Lopez has not produced any evidence indicating the existence of a conspiracy to deprive her of her constitutional right to due process sufficient to warrant submission of the matter to a trier of fact.

Defendants' Motion for Summary Judgment with respect to Plaintiff's state law claims is DENIED. The party seeking summary judgment always bears the initial burden of informing the district court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Defendants failed to meet this burden.

Defendants' Motion for Summary Judgment is DENIED with respect to all other claims not discussed herein.

**ORDER**

**WHEREFORE,**

A Memorandum Opinion having been entered this date, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to the Claims of Refugia Lopez (Doc. 45) is **GRANTED IN PART and DENIED IN PART**.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**