IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUANITA L. ESTRADA as the Personal Representative of
Michael Molina, deceased;
JUANITA L. ESTRADA individually; and
REFUGIA LOPEZ, individually,

      Plaintiffs,

vs.                                                                                          No. CIV 09-10 RB/CG

THE CITY OF LAS CRUCES;
LCPD POLICE OFFICER MARK DOMINGUEZ;
LCPD POLICE OFFICER HORACIO RIVERA;
GEORGINA P. CORDOVA as the Personal Representative of the Estate of
LCPD POLICE OFFICER DAVID CORDOVA; and
LCPD SUPERVISORY POLICE OFFICER(S) JOHN DOE(S) of the
Las Cruces Police Department,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment as to the Claims of Juanita L. Estrada (Doc. 42), filed August 25, 2009. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

### I.   PROCEDURAL BACKGROUND

This case involves the police shooting of Michael Molina, now deceased, and the actions of law enforcement officials from the Las Cruces Police Department leading up to and following the shooting. Plaintiff Juanita Estrada brings state and federal claims in her individual capacity against Officers Mark Dominguez, Horacio Rivera, and David Cordova, their supervising officers, and the City of Las Cruces. A Complaint for Damages was originally filed with the District Court of Doña Ana County on December 15, 2008. Notice of Removal was filed on January 6, 2009, and the case

was properly removed to federal court under 28 U.S.C. § 1441. An Amended Complaint for Damages was then filed on May 9, 2009. This Court has jurisdiction to hear the case under 28 U.S.C. § 1331, as it involves federal questions arising under 42 U.S.C. § 1983. The Court has jurisdiction to hear Plaintiff's state law claims under 28 U.S.C. § 1367, as the claims arise out of the same case or controversy. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (finding that the claims must arise out of the "same nucleus of operative facts"). Defendants filed their Motion for Summary Judgment as to the Claims of Juanita Estrada on August 25, 2009, Plaintiff filed her Response on September 9, 2009, and Defendants filed a Memorandum in Reply on September 18, 2009.

## II. STATEMENT OF FACTS

The trial court must view the evidence and draw any reasonable inferences therefrom in favor of the non-moving party. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). Consequently, the facts in a memorandum opinion and order are typically set forth in the light most favorable to the non-moving party. The facts set forth below have been gleaned from the parties' pleadings and discovery materials provided to the Court. In viewing the facts, the Court has made all reasonable inferences in favor of the Plaintiff; however, the Court has noted where there exist disputed facts and whether they are material.

The police shooting of Michael Molina occurred at approximately 4:12 p.m. on the afternoon of December 26, 2006 at the Las Cruces residence of Gilbert and Juanita Estrada. Juanita Estrada is the mother of decedent, Michael Molina. Gilbert Estrada is Juanita's husband. Also present were Juanita's sisters Refugia Lopez and Hilaria Ludwig, and Hilaria's husband William Ludwig. Refugia Lopez had stopped by the Estrada residence on Starview Drive to visit with her sister Juanita on her

way home from her daughter's house. About fifteen minutes later, Juanita Estrada's sister Hilaria and her husband William also stopped by for a visit. The family all gathered in the Estrada's TV/computer room, which was adjacent to, and had a window that opened onto, the front porch. Shortly thereafter, the three sisters—Juanita, Refugia, and Hilaria—went to the kitchen to make coffee.

While they were making coffee in the kitchen, Juanita Estrada's son Michael arrived at the front door and rang the bell. Michael had been living with Juanita and Gilbert Estrada, and they had given Michael a truck to drive that belonged to Gilbert. However, Juanita was concerned about her son's recent behavior. About three to four months prior, Michael had driven the truck home drunk, and then again just a few days before Christmas. In addition to the drunk driving, Michael had recently abandoned the truck on the side of the highway, and when Mrs. Estrada gave him a ride to retrieve it, they discovered that it had been towed. Gilbert Estrada had to go to the police impound to retrieve the truck on December 26, 2006. Michael had also purchased a necklace from Zales for his girlfriend Bernice with Juanita's credit card and failed to make one of the payments. According to Mrs. Estrada, Michael had been drinking more than he should and acting irresponsible. Her ex-husband was an alcoholic, and she was concerned about her son and wanted him to attend AA. Michael's behavior led the couple to decide that Michael could not use the truck anymore and that he was no longer welcome to live with them. Mrs. Estrada had decided it was time to put her foot down, and on December 26, 2006, they changed the locks on the house and decided that they would tell Michael he needed to move out.

When Michael rang the doorbell that afternoon, Mrs. Estrada went to the front door to see who it was. When Mrs. Estrada saw it was Michael, she told him to go away. Michael wanted to

take the truck, and he pleaded with his mother not to turn him away. When his mother would not let him in the front door, Michael went around to the back of the house, jumped the fence, and came into the kitchen through the back door. Mrs. Estrada and her son then began to talk. Mrs. Estrada told him that they were taking the truck away from him because it was irresponsible to drink and drive and he could kill someone. Furthermore, the truck was registered in Gilbert Estrada's name, and they were concerned that Gilbert could be held liable if something happened.

Mrs. Estrada also brought up the issue of the missed credit card payment for the necklace that Michael had bought for Bernice. Michael was upset and called Bernice so that she could tell his mother that he had made the payment. Michael went out to the backyard to talk to Bernice on the cordless phone. From the kitchen, Juanita could hear Michael yelling at Bernice. When he was done talking to Bernice, Michael came back into the kitchen and started up again about the truck.

Michael was clearly distraught, and Juanita Estrada was becoming concerned. Michael accused Mrs. Estrada of doing more for her son Isaac, told her that she had abandoned him, and then picked up a knife from the kitchen and said that he should just kill himself. Mrs. Estrada told her sister Hilaria to have someone call the police, but continued to talk to Michael in the kitchen. Hilaria's husband William Ludwig stepped outside and called 911 on his cell phone. In total, Mr. Ludwig made three calls to the police requesting assistance. During the third call, he informed the police that Michael had a knife and was threatening to kill himself.

The police arrived at 4:11.21 p.m. What happened after the officers arrived and leading up to Michael Molina's death is disputed by the parties; however, the disputed facts are not material to Mrs. Estrada's claim. When the officers arrived they were greeted by William Ludwig, who informed them that Michael was still inside the house and that he had a kitchen knife. When Hilaria

4

Ludwig heard that the police had arrived, she also went outside, exiting the house through the garage. Michael came out the front door and stood on the porch with the knife in one of his hands. The officers drew their weapons and advanced across the yard toward the front porch. When the three officers were about twenty feet from the porch, Michael either made a lunging movement forward and in the direction of the officers, or he dropped the knife and made a movement toward his right to hide behind a porch pillar. This movement caused the officers to discharge their weapons, and at 4:12.35 p.m. Officer Rivera radioed in that shots had been fired.

When the police shot Michael, Mrs. Estrada was still inside the house in the TV/computer room with her sister Refugia and her husband Gilbert. When Juanita Estrada heard the shots, she tried to go out the front door, but Refugia and Gilbert held her back. After the shooting had ended, Refugia went to the front door to try and get outside, but a police officer was holding the door shut with his foot. More police officers soon arrived on the scene, and Refugia, Juanita, and Gilbert were then allowed outside. Refugia Lopez was the first to come out. As she exited the house, Officer Cordova handcuffed her, escorted her toward a small rock wall, and instructed her to sit down. Mrs. Estrada and her husband Gilbert Estrada exited the house after Ms. Lopez. While neither of them were handcuffed, they were instructed to sit on the rock wall with Ms. Lopez.

Juanita Estrada was crying and distraught and attempted to go see her son, but the officers told her to sit on the rock wall. While they were waiting for the paramedics to arrive, the police did not provide any first aid or medical assistance to Michael, and they refused to allow Michael's family members to approach him to provide aid or comfort. Michael was pronounced dead at the hospital later that day.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (quoting *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant—in this case, the Defendants—carries the initial burden of showing that no genuine issue of material fact exists. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party—Plaintiff Juanita Estrada—to find sufficient evidence that would warrant submission of the case to a trier of fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). "Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor." *Adams*, 233 F.3d at 1246.

**B.     Section 1983 Claims**

In their Memorandum in Reply, Defendants argue that Plaintiff Juanita Estrada abandoned her federal claims under 42 U.S.C. § 1983.  In her Response to Defendants' Motion for Summary Judgment, Plaintiff stated, "The civil complaint is clear and unambiguous that Juanita Estrada does not assert any claim for violation of a federal constitutional right pursuant to 42 U.S.C. 1983." (Doc. 47, p. 2.)  Thus, it appears that Mrs. Estrada has indeed abandoned her Section 1983 claims.

Additionally, in their Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants argue that their motion should be granted with respect to Plaintiff Juanita Estrada's Section 1983 claims because Mrs. Estrada has failed to offer evidence demonstrating a violation of her individual constitutional rights. *See Celotex*, 477 U.S. at 325 (finding that moving party may meet its burden by pointing out "an absence of evidence to support nonmoving party's case").  While Plaintiff Juanita Estrada argues that police exercised unjustifiable excessive force in the performance of their duties by shooting her son Michael Molina, she does not explain how her individual constitutional rights were violated by the actions of the police.  A Section 1983 claim must be based on the violation of a constitutional right possessed by the plaintiff individually. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("We must [] keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."); *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982) ("[T]he § 1983 civil rights action is a personal suit.  It does not accrue to a relative, even the father of the deceased."); *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986) (holding that a wife who witnessed officers shoot into home did not have a valid Section 1983 claim for emotional injuries because the deputies' action was not directed towards her).  Therefore, Plaintiff Juanita Estrada

7

cannot rely on allegations of excessive force with regard to her son, Michael Molina; instead, she must show how Defendants violated her individual constitutional rights.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex*, 477 U.S. at 323–24. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Mrs. Estrada has provided no evidence to substantiate the Section 1983 claims that she brings in her individual capacity; therefore, Defendants' Motion for Summary Judgment with regard to Plaintiff Juanita Estrada's Section 1983 claims is granted.

### C. Supplemental Jurisdiction over State Law Claims

Defendants argue that by abandoning her federal Section 1983 claims, Plaintiff Juanita Estrada has negated this Court's subject matter jurisdiction with regard to her state law claims. Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350; *see also Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990). While the Court granted summary judgment with regard to Plaintiff Juanita Estrada's individual Section 1983 claims, Mrs. Estrada also serves as the personal representative of the estate of Michael Molina and brings several Section 1983 claims in this capacity. Defendants filed a motion for summary judgment with regard to these claims as well, which are dealt with in a separate memorandum opinion and order. Therefore, even though Plaintiff

Juanita Estrada abandoned her individual federal claims, several federal claims still remain in this case, including those Section 1983 claims brought by Plaintiff Juanita Estrada as the personal representative of Michael Molina and the Section 1983 claims brought by Plaintiff Refugia Lopez. Consequently, at this stage of the litigation, it does not appear that "state issues substantially predominate" such that "the state claims [should] be dismissed . . . and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27. Furthermore, considerations of judicial economy, convenience, and fairness to the litigants weigh in favor of allowing all Plaintiffs in this action to try their claims in one forum. *See Carnegie-Mellon*, 484 U.S. at 350. Consequently, the Court finds that it has jurisdiction to hear Plaintiff Juanita Estrada's state law claims under 28 U.S.C. § 1367 and rejects Defendants' request to remand the claims to state court.

### D.     State Law Claims

Plaintiff Juanita Estrada brings state law claims under the New Mexico Tort Claims Act "against the three Police Officers . . . for personal injury, damages resulting from assault, false imprisonment, false arrest and deprivation of her rights, privileges or immunities secured by the Constitutions and Laws of . . . the State of New Mexico. As a further and specific tort she brings an action for negligent infliction of emotional distress." (Pls.' Amended Compl. ¶ 48.)

Defendants argue that negligent infliction of emotional distress "does not number amongst the enumerated torts for which liability has been waived under the [New Mexico Tort Claims] Act." (Doc. 43, p. 7.) The Act provides, in relevant part:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury . . . resulting from assault, battery, false imprisonment, false arrest, . . . or deprivation of any rights, privileges or immunities secured by the constitution and laws of . . . New Mexico when caused by law enforcement officers while acting within the scope of their duties.

9

§ 41-4-12 N.M.S.A. 1978. In order to bring a tort claim against a law enforcement officer or his government employer, plaintiff must first identify a tort for which immunity has been waived. "Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act." *Derringer v. State*, 68 P.3d 961, 965 (N.M. Ct. App. 2003). Plaintiff Juanita Estrada's claim of negligent infliction of emotional distress is clearly not one of the common law torts enumerated in Section 41-4-12. Therefore, if Mrs. Estrada hopes to recover for her alleged personal injuries—which may include both physical and emotional injuries—she must rely on the second part of Section 41-4-12, which waives immunity for governmental officials when there has been a violation of a right guaranteed by the constitution or laws of the State of New Mexico. *Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1320–21 (N.M. 1996); *California First Bank v. New Mexico*, 801 P.2d 646, 652–55 (N.M. 1990); *Lucero v. Salazar*, 877 P.2d 1106, 1107–08 (N.M. Ct. App. 1994); *Blea v. City of Espanola*, 870 P.2d 755, 759 (N.M. Ct. App. 1994); *Caillouette v. Hercules, Inc.*, 827 P.2d 1306, 1311 (N.M. Ct. App. 1992); *Romero v. Otero*, 678 F.Supp 1535, 1540 (D.N.M. 1987).

If Plaintiff Juanita Estrada can identify a specific, private legal right secured by New Mexico law which was violated by the officers' negligent failure to perform their statutory duties, then she may assert a claim under Section 41-4-12. *Weinstein*, 916 P.2d 1321–22. Mrs. Estrada asserts that her claim for emotional injury is actionable under the Tort Claims Act because she was deprived of a statutory right guaranteed by § 3-13-2(A) N.M.S.A. 1978, which provides in relevant part:

> The police officer of a municipality shall . . . within the municipality: (a) suppress all riots, disturbances and breaches of the peace; (b) apprehend all disorderly persons; (c) pursue and arrest any person fleeing from justice; and (d) apprehend any person in the act of violating the laws of the state or the ordinances of the municipality and bring him before competent authority for examination and trial.

Section 3-13-2(A) was "designed to protect individual citizens from harm," and it has been specifically recognized as "secur[ing] private rights which may be enforced under the Tort Claims Act." *Weinstein*, 916 P.2d at 1322.

Under the Tort Claims Act, a plaintiff "may raise a claim for personal injuries resulting from a law enforcement officer's negligent failure to perform a statutory duty," such as the duty established by Section 3-13-2(A). *Id.* at 1321. However, in its analysis of the claim, the court must adhere to the traditional tort concepts of duty and foreseeability. *Lucero*, 877 P.2d at 1108–09. In *Lucero*, two children of a father who was allegedly killed without justification by Albuquerque police officers brought suit against law enforcement officials alleging that they had been deprived of their relationship with their father and their right to enjoy life and seek happiness under Article II, Section 4 of the New Mexico Constitution. *Id.* at 1107. The New Mexico Court of Appeals analogized the plaintiffs' claim to the tort of negligent infliction of emotional distress. *Id.* at 1108. The Court noted that any claim brought under the Tort Claims Act required the application of traditional tort concepts of duty and foreseeability, and the Court then undertook an analysis of the plaintiffs' claims under these fundamental tort concepts. *Id.* at 1108–09; *see also Methola v. County of Eddy*, 622 P.2d 234, 239 (N.M. 1980) ("established law of negligence and damages shall apply to the claims"). The Court found that "as a matter of law, Plaintiffs were unforeseeable as injured parties, and therefore Defendants owed no duty to them." *Lucero*, 877 P.2d at 1108. "We thus construe the language of Section 41-4-2(A) as evincing a legislative intent not to waive immunity for injuries to indirect or incidental victims of tortious acts committed by government employees." *Id.* at 1109.

When analyzing a claim for personal injury arising out of a law enforcement officer's

11

negligent failure to perform a statutory duty, "[t]he nature of the duty owed by the officer to the plaintiff in such a claim is necessarily determined by the scope of the officer's obligations under the statute." *Weinstein*, 916 P.2d at 1321. "The ultimate goal of [Section 3-13-2] is to further public safety . . . ." *Id.* at 1322. Section 3-13-2, however, was not designed to protect bystanders from negligent infliction of emotional distress when police act negligently in detaining a disorderly suspect. The law was designed to protect the public from suspects who are not apprehended by the police and might injure a member of the public. Thus, the statute creates a duty to apprehend those who pose a danger to society. *See, e.g., Weinstein*, 916 P.2d 1313 (finding law enforcement failed to fulfill statutory duty by negligently releasing rapist from custody who then raped plaintiffs' daughter); *California First Bank*, 801 P.2d 646 (finding officers negligently failed to apprehend suspect who they knew to be intoxicated and who later collided with another car); *Blea*, 870 P.2d at 758 (finding that law enforcement officials negligently failed to detain suspect who "was driving while intoxicated, was in possession of controlled substances, and was jeopardizing the health and safety of himself, his passengers, and his fellow citizens" who then rear-ended another car).

The allegations brought by plaintiffs in *Weinstein*, *California First Bank*, and *Blea* "fall[] squarely in the narrow negligence exception of *Methola*." *Blea*, 870 P.2d at 758. The allegation of negligent infliction of emotional distress brought by Plaintiff in the case at hand does not. Plaintiff is not claiming that she was injured by a person who posed a danger to society and who law enforcement officials negligently failed to apprehend. Rather, she is claiming that she was injured because the officers unlawfully exercised deadly force in subduing Mr. Molina, and as a bystander, she suffered emotional distress. This type of injury was not foreseeable in relation to the duty that the officers owed to the public and Mrs. Estrada under Section 3-13-2.

12

Furthermore, Plaintiff has not produced any evidence showing how the officers violated the statute. *See Lessen v. City of Albuquerque*, 187 P.3d 179, 189 (N.M. Ct. App. 2008). By subduing Mr. Molina, Defendants fulfilled their statutory duty to apprehend disorderly persons and protect the public. Therefore, the Court finds that under the circumstances of this case, Plaintiff's claim for negligent infliction of emotion distress is barred by the New Mexico Tort Claims Act.

This finding does not, however, preclude Plaintiff from claiming damages for emotional distress under her other state law tort claims of assault, false imprisonment, or false arrest as "[d]amages for emotional distress . . . may be recoverable as damages for 'personal injury' resulting from one of the enumerated acts." *Romero*, 678 F. Supp. at 1538. Defendants did not address these other enumerated torts in their motion for summary judgment; and therefore, the Court grants Defendants' Motion for Summary Judgment only for Plaintiff's claim of negligent infliction of emotional distress, and not for her other state law claims. Plaintiff may thus still bring an action for those torts for which immunity from liability has been waived under the Tort Claims Act.

### E.     Conspiracy Claim

Plaintiff also brings an action against Defendants for conspiracy to deprive her of her due process rights by "allowing evidence to be lost, and [the] rendition of events to be modified by permitting the three Police Officers . . . to meet and confer with one another, then with the union representative and criminal defense attorney, together and prior to their individual statements being taken by investigating detectives." (Pls.' Amended Compl. ¶ 54.) In Subsection B (Section 1983 Claims), *supra*, the Court found that Plaintiff abandoned her Section 1983 claims and granted Defendants' Motion for Summary Judgment with regard to those claims. Therefore, Plaintiff's conspiracy claim must stand under state law, or not at all.

13

Defendants argue for the first time in their Memorandum in Reply that Plaintiff has failed to state a claim for civil conspiracy under common law. Generally, a district court will not consider granting summary judgment for a claim where movant argues for the first time in its memorandum in reply that summary judgment is appropriate. *See, e.g., State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (finding that failure to raise issue in opening brief constitutes waiver); *Taylor v. United Management, Inc.*, 51 F. Supp. 2d 1212, 1215 (D.N.M. 1999) (finding claim untimely when raised for the first time in reply brief); *Employers Mut. Cas. Co. v. Miner*, 6 F. Supp. 2d 1232, 1236 n. 5 (D. Kan. 1998) ("court will not grant summary judgment based on an issue raised for the first time in a reply brief."). Furthermore, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. As Defendants failed to meet this initial burden in their Memorandum in Support of their motion, the Court will not now consider their argument for summary judgment with regard to Plaintiff's state law conspiracy claim. Therefore, Defendants' Motion for Summary Judgment with respect to Plaintiff's state law conspiracy claim is denied.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment with respect to Plaintiff Juanita Estrada's Section 1983 claims is GRANTED. In her Response to Defendants' Motion for Summary Judgment, Mrs. Estrada stated that she was not asserting any claims for violation of a federal constitutional right pursuant to 42 U.S.C. § 1983. Furthermore, Mrs. Estrada has provided no evidence showing a violation of her individual constitutional rights to substantiate a Section 1983 claim.

14

Defendants' Motion for Summary Judgment with respect to Plaintiff Juanita Estrada's claim for negligent infliction of emotional distress is GRANTED. Plaintiff argues that immunity under the Tort Claims Act was waived for this claim because she suffered a personal injury as a result of the negligent failure of law enforcement officials to perform a statutory duty imposed by § 3-13-2 N.M.S.A. 1978. However, the type of injury complained of was not foreseeable in relation to the duty that the officers owed to the public and Plaintiff Juanita Estrada under Section 3-13-2, and in its analysis, the Court must adhere to the traditional tort concepts of duty and foreseeability.

Defendants' Motion for Summary Judgment with respect to Plaintiff Juanita Estrada's state law conspiracy claim is DENIED. Defendants failed to meet their initial burden of informing the district court of the basis for their motion, and the Court will not consider granting summary judgment for a claim where movant argues for the first time in its memorandum in reply that summary judgment is appropriate.

## ORDER

**WHEREFORE,**

A Memorandum Opinion having been entered this date, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to the Claims of Juanita Estrada (Doc. 42) is **GRANTED IN PART and DENIED IN PART**.

*/s/ Robert Brack*
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**